CANDAL ET AL., PLAINTIFFS AND APPELLEES, *v.* VARGAS ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in an Action Contesting an Election.

No. 2418.—Decided May 20, 1921.

ELECTION CONTEST—APPEAL.—Judgment having been entered in a contested election case that the defendants vacate the offices to which they were elected and pay the costs, an appeal therefrom by the defendants will not be dismissed on the ground that its consideration would serve no practical purpose for the reason that while the action was pending in the lower court and before judgment was entered the defendants informed the court that they had resigned from the offices involved and other persons had been appointed to substitute them and had taken possession of the said office, for nothing has occurred since the judgment was entered to make it a purely academical question whether or not error was committed in giving judgment against the appellants, and if owing to such resignations and appointments the action should have been dismissed in the lower court without entering judgment, that is a question for this court to decide on appeal from the judgment.

ID.—JURISDICTION—RESIGNATION.—In accordance with the laws of Porto Rico, the members of a municipal assembly who have obtained certificates of election and whose elections are contested can not prevent that the action be prosecuted to final judgment by resigning their offices. It can not be held that their resignations deprive the court of jurisdiction and the action of a practical purpose.

ID.—INELIGIBLE CANDIDATE—ENGLISH RULE.—The election of an ineligible candidate to a public office, although the cause of his disqualification was known to the electors before they voted for him, does not give to the defeated candidate who received the next highest number of votes a right of action to be declared entitled to the office of the other, for the vacancy resulting from the disqualification of the candidate elected must be filled in accordance with the law. The Supreme Court does not accept the doctrine known as the English rule, according to which when the electors cast their votes for a person knowing that he can not qualify for the office to which their votes elect him the votes are thrown away and it is as if they had not voted and therefore the candidate who received the next highest number of votes must be considered elected, for, following an almost unanimity of the courts of the United States which have considered that question, this court holds that only the candidate who received the greatest number of votes is entitled to the office, and not the candidate who was rejected by the electors, it being a fundamental idea among us that a majority must elect and that any rule which opens the road for a government by the minority is anti-republican and anti-American.

ID.—PLEADING.—In accordance with the law governing contested elections, the

complaint is bad, because, by its own terms the said act is applicable to cases where the contestant, or plaintiff, would be entitled to be declared elected upon recovering a judgment.

The facts are stated in the opinion.

*Messrs. L. Feliu* and *J. Soto Rivera* for the appellants.

*Mr. R. Cuevas Zequeira* for the appellees.

MR. JUSTICE ALDREY delivered the opinion of the court.

A motion by the appellees for dismissal of the appeal is pending in this case and we must rule on it before considering the merits of the appeal, for if the motion should be sustained the matter would be terminated in this court and no consideration could be given to the appeal on its merits.

The action is one to contest the election of the three defendant-appellants as municipal assemblymen of Fajardo at the general election held in this Island on November 2, 1920, and the contest is based by the plaintiffs on the contentions that the defendants were not eligible on October 11, 1920, to appear as candidates on the official ballot, and that by reason of their ineligibility, which was known to the electors, the three plaintiffs are entitled to the said offices, although from the returns made by the Insular Board of Elections they appear to have been defeated by the three defendants.

The defendants were duly summoned on December 31, 1920, and demurred to the complaint, but when on January 10, 1921, the municipal assemblymen of Fajardo who had been elected in the previous November met for the first time only one of the three defendants qualified for office and the other two tendered their resignations which were accepted on the following day. Thereupon two other persons were appointed by the municipal assembly to substitute them and on the same day the other defendant who had qualified resigned and another person was appointed in his stead. On January 26, 1921, the three defendants laid these facts before the District Court of Humacao and moved for dismissal of the action, with the costs against the plaintiffs, on the ground

that by reason of their resignation and the appointment of other persons to occupy their places, the action would serve no practical purpose. The plaintiffs opposed this motion and the court overruled it, entering a default judgment against the defendants later to the effect that their election was null and void and ordering that they be ousted from their offices and that the possession thereof be given to the plaintiffs, with the costs, expenses, disbursements and attorney fees against the defendants.

The defendants appealed and the appellees moved for dismissal of the appeal for the following reasons: "First, because the defendant-appellants were not affected by the judgment of the District Court of Humacao, inasmuch as they had resigned from the offices in controversy and withdrawn from the action. Second, because the said defendant-appellants have no interest in this action and for that reason the issue raised is purely fictitious and has no practical purpose, inasmuch as the judgment that may be rendered by this court could neither prejudice nor benefit the appellants. Third, because the aforesaid resignations appear from a motion of the defendant-appellants made in the District Court of Humacao and transcribed on page 55 of the record filed with the secretary of this court."

In their brief in support of the motion for dismissal the appellees sum up the three foregoing grounds as follows: That the defendants are not affected by the judgment, for which reason they can not appeal from it, in accordance with section 294 of the Code of Civil Procedure, which is the law applicable to the case and provides that an appeal may be taken by any party aggrieved by the judgment or order.

The act to provide a manner for contesting elections of March 7, 1906, Compilation of the Revised Statutes, sections 898 *et seq.,* governs proceedings in cases of contests of elections of the officers specified therein and although section 4 provides that in such cases the procedure in civil cases shall

govern, nevertheless, with regard to appeals section 11 prescribes that "either the contestant or the contestee may appeal from the judgment of the district court to the Supreme Court * * * ;" therefore the defendants had a right of appeal from the judgment entered against them in the District Court of Humacao both because they were the contestees and because they were prejudiced not only by its declaring their elections null and void and ordering that they be ousted from the offices, but also by its imposition of the costs upon them; hence, even in accordance with section 294 of the Code of Civil Procedure, they are parties aggrieved by the judgment against them and nothing has occurred since to render the appeal of no practical value, for whether on account of their resignations before judgment the action should have been dismissed in the lower court is a question to be considered in the appeal from the judgment, but that is no ground for dismissal of the appeal, for all of which reasons we can not sustain the motion for dismissal and shall pass on to the merits of the case.

We shall consider first the second ground alleged by the appellants in support of a reversal of the judgment, that is, that the lower court erred in overruling their motion for dismissal of the action because, having resigned the offices involved, the adjudication of the action would serve no practical purpose; for if that error was committed and the defendants' motion should have been sustained by the lower court, it would be unnecessary for us to consider the other grounds of appeal. For a discussion of this question the facts above recited will suffice.

The trial court based its refusal to dismiss the action on section 161 of 9 R. C. L., page 1172, wherein it is said:

"In view of the personal character of a statutory proceeding contesting an election it would seem that if the person declared elected to an office resigns or refuses to accept the office and some other person is appointed or elected before a contest is instituted, this

constitutes a valid defense to proceedings brought against him, and that he cannot be made a defendant and compelled to litigate an office he no longer claims or holds. But it seems also that after the proceedings are brought he cannot, by resigning, avoid a judgment of ouster.''

The appellants contend that that doctrine is not laid down in a positive form, but is expressed with some doubt, and that if the action is to be directed against a person holding a certificate of election, as provided in section 2 of the Act cited *supra,* the action can not be prosecuted against the defendants because they have resigned the offices and now do not hold the certificates.

In accordance with the said act, the action was directed against the persons to whom the certificates of election had been issued and although it is true that thereafter the defendants resigned the offices to which they had been elected and other persons were appointed in their places, it does not follow that the action would serve no practical purpose or that the jurisdiction of the court was ousted by reason of the resignations, because as our Municipal Law provides that vacancies in municipal assemblies shall be filled by the appointment of persons of the same political party as that of the persons who caused the vacancies, the resignation of a contested office and the filling of it by a person of the same political faith would be a very simple manner of preventing investigation by the courts of the illegality of an election and would deprive the candidate who was illegally defeated of his right to occupy the office claimed, and this can not be upheld by the courts. Besides, as the Act providing for contesting elections requires the defendant to give bond if he desires to occupy the contested office pending the decision of the contest and that if he should not do so within the time therein fixed the plaintiff may give such bond and take possession of the office, then if the defendants' theory should be upheld it would be to acknowledge in them a right to

violate the said law, for by their resignation, and without giving bond, the offices could be given to persons of the same political faith and the plaintiffs would be obliged to institute proceedings to recover possession of the offices which the law gives them if they furnish the bond which the defendants failed to furnish.

All of the foregoing convinces us that under our laws a person who has received a certificate of election can not prevent, when his election is contested, the action from being prosecuted to final judgment, although he may resign the office. It was so held in *Davis* v. *Jones,* 123 Ala. 647, 36 So. 321; *Sweney* v. *Adams,* 141 Cal. 588, 75 Pac. 182, and *Bush* v. *Head,* 154 Cal. 277, 97 Pac. 512, although in the last two cases the ground was public interest under the right of contest conferred upon any elector of the county, albeit the actions were brought by the defeated candidates and it does not appear that they asserted their rights as electors. According to McCrary on Elections, section 456a, page 335, it has been held by the House of Representatives of the United States in the case of *Mackey* v. *O'Connor,* 2 Ells. 561, that where, pending a contest in the House, and after the pleadings are made up and the proof taken, the contestee dies and a successor is elected to fill his unexpired term, the seat of the successor depends upon the election of the original contestee, and that he is in consequence bound by the pleadings and proof in the original contest and by a decision afterwards rendered therein.

Hence, we are of the opinion that the court below did not commit the error assigned in refusing to dismiss the action because of the resignations of the defendants.

This question being disposed of, we will consider the error first assigned, that is, in overruling the demurrer to the complaint.

The action was brought by Eladio J. Candal, José Vidal Planellas and Luis Acosta Becerril against Salvador Vargas,

Avelino F. Carrión and Ramón Piñeiro, who demurred on the ground of misjoinder of parties and of causes of action and that the complaint did not allege facts sufficient to constitute a cause of action, but in this appeal the defendant-appellants insist only on the last ground of the demurrer in support of a reversal of the judgment against them; therefore, we shall confine ourselves to that plea.

It is alleged in the complaint that on election day, November 2, 1920, and prior to the hour of 12 m. on the 11th of October, 1920, the defendants were not eligible to be members of the municipal assembly of Fajardo, because before the registration of his name as a candidate defendant Avelino F. Carrión had been twice discharged from the insular police force, the first time for misconduct and the second time for immoral conduct and for having knowingly and falsely sworn, for the purpose of re-entering the insular police force, that he had never been discharged from the police force, but had retired on account of the expiration of the time for which he was appointed. It is alleged that Salvador Vargas had been charged before the Municipal Court of Fajardo with violating section 162 of the Penal Code and that he was convicted and sentenced to imprisonment in the municipal jail of Fajardo, the court further ordering that his name be eliminated from the list of voters of the municipality of Fajardo. It is alleged that Ramón Piñeiro had been charged before the same court with a like offense and was convicted and sentenced to imprisonment in the municipal jail, it being also ordered that his name be eliminated from the list of voters of the municipality of Fajardo. The fifth allegation of the complaint adds that the said judgments were entered against Vargas and Piñeiro on August 30, 1920, and September 3, 1920, respectively; that the sentences were served by the said defendants in the municipal jail of Fajardo, and that notice thereof was given to the Insular Board of Elections and the names of the defendants were so eliminated

in accordance with the said judgments. It is also alleged in the complaint that the aforesaid grounds of ineligibility of the defendants were well known to the electorate and to the whole community of Fajardo, because the judgments were entered by the Municipal Court of Fajardo after public trials which were largely attended by the citizens owing to the sensational nature in which the community held the criminal prosecutions against Vargas and Piñeiro and because the said judgments, and especially that part which ordered the elimination of defendants' names from the list of voters, were the object of public propaganda at mass-meetings, and by different means of publication it was personally made known to the electors that every person who voted the Socialist ticket of Fajardo would lose his vote in so far as the defendant candidates were concerned, because the discharge of Avelino F. Carrión from the insular police force for criminal acts and immoral conduct was also known to the electors of Fajardo and had been, like the aforesaid judgments, the subject of general comment and warning in Fajardo during the electoral campaign. The complaint likewise alleges the personal eligibility of the three plaintiffs and also that they were the candidates defeated in the election by the three defendants, but that as the election of the three defendants was null and void for the above reasons, the plaintiffs were really elected because the votes cast in favor of the defendants can not be counted in their favor, for which reason the ticket of the Socialist party in Fajardo should be considered as if the names of the defendants had not been included and their offices left blank, and for that reason the three plaintiffs should be declared elected in place of the defendants whom they follow in the number of votes received among the defeated candidates according to the official return of the Insular Board of Elections.

The allegations of the complaint show clearly that the theory on which the plaintiffs base their right is that the

effect of the ineligibility of the three defendants for election as members of the municipal assembly of Fajardo is that the votes received by them can not be counted and that therefore the said offices belong to the three plaintiffs who received the next highest number of votes. The defendant-appellants maintain that the theory of the plaintiffs, known as the English rule, has not been accepted by the American courts, which, on the contrary, with very few exceptions, hold that the election of a disqualified person to an office does not give the right to a defeated opponent to hold the office and that therefore the complaint, based on that unaccepted theory, does not allege facts sufficient to constitute a cause of action in the plaintiffs.

The English rule has been accepted by very few courts of the United States, for almost all of those which have had before them questions like the one being considered have positively rejected the rule as contrary to the principles of the republican form of government of the United States. Thus we find in McCrary on Elections, page 248; 20 C. J. 207, notes 43–48, and 9 R. C. L. 1126, that while it has been accepted in Indiana, in some case in Ohio and New York and recently in Wisconsin, it has been rejected by the Congress of the United States and also in Arkansas, California, Georgia, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, New Jersey, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Dakota, Vermont, West Virginia and Porto Rico.

In view of the numerous decisions contrary to the English rule in the United States, we may conclude that almost all of the courts of the American Union are against its adoption, as stated by McCrary on page 249 of his said treatise, and although in the recent decision of 1910 in *State ex rel. Brancroft* v. *Frear,* 144 Wis. 90, four of the seven judges of the court said that the weight of authority, English and

American, is to the effect that votes knowingly cast for a candidate who can not possibly exercise the functions of the office if elected, are thrown away, the three dissenting judges declared that the contrary rule has the weight of authority in the country.

There is, then, no doubt about what has been said, considering the number of the decisions, but if we examine the arguments for and against the said rule we shall find that the view contrary to its adoption is well justified. As far back as 1859 the Supreme Court of California, in *Sanders* v. *Haynes,* 13 Cal. 153, said:

"It will be observed that the point of this defense is, that the votes cast for Turner, supposing he received the highest number, were nullities, because of his assumed ineligibility. But we do not so consider. Although some old cases may be found affirming this doctrine, we think that the better opinion at this day is, that it is not correct.

"The celebrated controversy in the British Parliament between Wilkes and Luttrel has given rise to much discussion; and the opinions of jurists and statesmen have been somewhat divided. But the prevailing opinion, English and American, of modern times, seems to be against the precedent established in that case. In the case of Whitman and Melony (10 Cal. 38), Mr. Justice Field clearly intimates his opinion in favor of the principle that the votes given for an ineligible candidate are not to be counted for the next highest candidate on the poll. In *State of Wisconsin* v. *Giles,* (1 Chand. 117) the same doctrine is held; and is enforced by the Judges of the Supreme Court of Maine, in their opinion, to be found in 38 Me. 597.

"Our legislative precedents seem to be the same way. Upon principle, we think the law should be so ruled. An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But if a majority of those voting, by mistake of law of fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received only a small portion of the votes and who never could have been elected at all but for this mistake. The votes

are not less legal votes because given to a person in whose behalf they cannot be counted; and the person who is the next to him on the list of candidates does not receive a plurality of votes because his competitor was ineligible. The votes cast for the latter, it is true, cannot be counted for him; but that is no reason why they should, in effect, be counted for the former, who, possibly, could never have received them. It is fairer, more just, and more consistent with the theory of our institutions, to hold the votes so cast as merely ineffectual for the purpose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretensions the people had designed to reject.''

This doctrine was upheld by the same court in 1877 in the case of *Crawford* v. *Dunbar*, 52 Cal. 41.

In McCrary on Elections, page 249, after citing the cases in which the English rule has been considered and rejected, it is said:

''Thus, it will be seen that the weight of authority in this country is decidedly against the adoption here of the English doctrine. And we think that sound policy, as well as reason and authority, forbids the adoption of that doctrine in this country. It is a fundamental idea with us that the majority shall rule, and that a majority, or at least a plurality, shall be required to elect a person to office by popular vote. An election with us is the deliberate choice of a majority or plurality of the electors. Any doctrine which opens the way for minority rule in any case is anti-republican and anti-American. The English rule, if adhered to, would in many cases result in compelling very large majorities to submit to very small minorities, as an ineligible person may receive, and in many cases has received, a great majority of the votes. It is enough, in such a case, to hold the election void.

''This question was elaborately discussed and settled, so far as the Senate of the United States is concerned, in the case of Joseph C. Abbott, of North Carolina. The decision of that case was against the adoption of the English rule in this country, and Abbott, who, notwithstanding he received only a minority of the votes cast, claimed a seat, upon the ground that he was the only eligible person voted for, was declared not elected. And it was distinctly asserted, in the report of the committee, that the fact that the voters have notice

of the ineligibility of the candidate at the time they cast their votes for him makes no difference. The remark of Judge Strong, in *Commonwealth* v. *Cluley*, (56 Pa. St. 270), that 'the disqualified person *is a person still*, and every vote thrown for him is formal,' is quoted with approbation. The broad doctrine was asserted that in this country an election, by a minority of the persons voting, is not to be tolerated under any circumstances. Mr. Carpenter, from the minority of the committee, submitted an elaborate report maintaining the right of Mr. Abbott to the seat, and the debate was exhaustive, but the Senate sustained the majority of the committee."

On the same question 15 Cyc. 391, citing numerous cases, has the following:

"But it is a fundamental idea in American politics that the majority shall rule, and that no person can be elected to office unless he shall receive a majority or at least a plurality of all the votes. It has accordingly been settled by the house of representatives of the United States that the ineligibility of the candidate receiving the highest number of votes gives no title to the candidate receiving the next highest number, even though the election was held in a state where the contrary rule obtains. The same rule has been adopted by the United States Senate and has the support of the great weight of judicial authority in the United States."

On our part, in the year 1906, in the case of *Domenech* v. *Moret*, 13 P. R. R. 96, this court considered the same question and rejected the English rule in affirming the judgment which dismissed the complaint on two grounds, one of which was that "If a candidate is ineligible the courts may so declare in a proper proceeding but the result of such an action can not serve to elect the candidate second in rank," and that holding can not be considered as *obiter dictum* in that case, as the appellees now maintain, for it was one of the grounds of the judgment on appeal. In that opinion the cases of *Saunders* v. *Haynes*, 13 Cal. 154, and *Crawford* v. *Dunbar, supra,* were cited and although it is true that in the former one of the three judges dissented, yet the majority opinion was ratified on reconsideration, and in the latter

case the doctrine was upheld by the votes of all of the judges. Besides, as we have already seen, in almost all of the States where this question has been considered the English rule has been rejected.

In support of the contention that we should adopt that rule in this case the appellees allege that as our Election Law requires that candidates by petition, as are the defendants, shall present with the petition an affidavit showing that they are eligible, which demonstrates the intention of the legislators to be that no ineligible candidates shall appear on the ticket, to hold that they may be elected would be to establish or admit the juridical absurdity that the laws favor their own violation. It is true that the purpose of that provision of the law is that only eligible persons shall appear on the electoral ticket, but the fact that for one reason or another there should come to appear on the electoral ticket a person ineligible to election will void his election and the votes received by that person will not be counted, but it does not follow as a logical consequence that the person should be considered as having received no votes, when in fact he received the highest number of votes, and that, therefore, it should be understood that the one receiving the next highest number of votes alone received votes, although the result of the election should show that he did not receive a majority of the votes.

Another contention of the appellees is that voting being compulsory, not for the negative action of defeating the adversary, but for the positive one of electing, the electors should elect in each municipality a certain number of persons as members of the municipal assembly, and that as the electors of Fajardo knew that the three defendants were not eligible, in voting the Socialist ticket on which the three defendants appeared they voted for all of the candidates of that party except the three defendants who were not law-

fully on the ticket. According to the allegations of the complaint the appellants were not eligible and had no right to appear on the ticket, but the fact is that they did because they were not substituted by others, therefore, according to the law, they had to appear on the electoral ticket and hence it can not be held that they were not lawfully on it; that they received no votes, and that for that reason the plaintiffs received the highest number of votes and should occupy the offices. The truth is that the defendants received a majority of the votes.

The argument that because the electors knew of the ineligibility of the defendants, those who received the next highest number of votes must be considered elected is an open petition that we adopt the English rule, which we have already considered and which we have seen has not been accepted in the United States or by this court, according to the case of *Domenech* v. *Moret, supra.* But it is contended that after that decision, and perhaps as a consequence of it, the Legislature amended the Election Law to the effect that if the incapacity or death of a candidate duly nominated should occur after twelve meridian of the 11th of October, his name shall remain on the ticket of his party and if he should receive the highest number of votes for the office it shall be declared vacant and shall be filled as provided by law. (Section 39*a*, Acts of 1908, page 88, reenacted in the Act of 1919, page 565.) This statute is convincing that an ineligible person may appear on the ticket and may receive the votes of the electors, though with the result that his office shall be declared vacant, but the person receiving the next highest number of votes shall not occupy the office on account of the ineligibility. We are of the opinion that the said amendment produced no difference between this case and that of *Domenech* v. *Moret, supra,* as the appellees maintain, for it only established a course of action in case of the in-

eligibility of a candidate occurring after twelve meridian of the 11th of October; and the fact that in this case the ineligibility of the defendants occurred before that date and they were not substituted by others proposed by the committee or board duly authorized or empowered to represent the party in such cases as provided by the law for cases where the ineligibility occurs before the 11th of October, does not favor the plaintiffs' claim to the defendants' offices, because the fact that the Municipal Law requires that those who have received the highest number of votes shall be declared elected until the total number of members of the municipal assembly is complete does not justify the conclusion that the plaintiffs received a majority of the votes, although it may appear thereafter that the election of the defendants was null and void.

The final contention of the appellees is that as our Legislature adopted the Australian ballot system, which is of English origin, the English rule to which we have repeatedly referred should be applied here and that the courts of the United States have accepted it where the Australian system has been adopted. This system governs the elections, but makes no reference to whether the vacancy caused by an ineligible person should be filled by the defeated candidate, and, as to the second point, although it is true that in 9 R. C. L., section 127, page 1126, it is said that it has been held in a recent case that the weight of authority, both English and American, is to the effect that votes knowingly cast for a candidate who can not possibly exercise the functions of the office if elected, are thrown away, citing the case of *State* v. *Frear*, 144 Wis. 79, 128 N. W. 1068, 140 A. S. R. 992, yet in that case the decision was that of four judges against three.

As a summary of the question which we have been considering we wish to say that we have set forth at some length the opinions which reject the English doctrine because they

clearly express the strong reasons existing in our political system for rejecting, as we do, the doctrine of the English rule and little more need be said, except that in our opinion the fact of the election of a candidate, although he may be ineligible to the office, can not be destroyed by the more or less fictitious theory that having knowledge of the ineligibility of the candidate the electors did not vote for him, when the fact is that they gave him the highest number of votes. The office may remain vacant, but for that reason it can not be given to the candidate who received the next highest number of votes and was rejected by a majority of the electors.

For the foregoing reasons the complaint does not allege facts sufficient to constitute a cause of action for the recovery of the offices by the plaintiffs on account of the ineligibility of the defendants; therefore it should be dismissed, for, even discarding this aspect of the complaint, the plaintiffs can not question in an election contest the eligibility of the defendants to the offices to which they were elected for the reason, as this court said in *Domenech* v. *Moret, supra,* that "in so far as the action appealed from purports to be a proceeding under the Act 'To provide a manner for contesting the election of officers, etc.' approved on March 7, 1907 (should be 1906), the proceeding must fail, as that act by its terms applies to cases where the contestant or plaintiff would be entitled to be declared elected if he succeeded."

The judgment appealed from is reversed and another rendered dismissing the complaint.

*Reversed.*

Chief Justice Hernández and Justices Wolf, Del Toro and Hutchison concurred.